[Cite as *In re Pratt*, 2023-Ohio-3348.]

## IN THE COURT OF CLAIMS OF OHIO

| | |
|---|---|
| IN RE: RICHARD S. PRATT | Case No. 2023-00203VI |
| ROSEMARY PRATT<br>NANCY MILOTA | Magistrate Holly True Shaver |
| Applicants | <u>DECISION OF THE MAGISTRATE</u> |

{¶1} On July 28, 2022, Rosemary Pratt and Nancy Milota ("applicants") filed a compensation application as a result of the death of Richard S. Pratt ("decedent") on May 22, 2020. Rosemary Pratt is the decedent's mother and Nancy Milota is the decedent's grandmother. Applicants sought compensation for crime scene clean up expenses and funeral and burial costs they incurred as a result of decedent's overdose.

{¶2} On November 28, 2022, the Attorney General ("AG") issued a finding of fact and decision denying applicants' application. The AG asserted that decedent was not a victim of criminally injurious conduct because decedent died from an accidental overdose.

{¶3} On December 20, 2022, applicants filed a request for reconsideration stating that in the criminal case concerning decedent's death, the defendants were charged with involuntary manslaughter and corrupting another with drugs.

{¶4} On January 3, 2023, the AG rendered a final decision finding no reason to modify its original finding of fact and decision. The AG stated that absent a finding of foul play, such as forced ingestion, a voluntary ingestion of a lethal dose of drugs does not constitute criminally injurious conduct. The AG was unable to find foul play in this instance. Finally, the AG stated that the coroner's report stated that an accidental overdose of ethanol, fentanyl, and methamphetamine was the cause of decedent's death.

{¶5} On February 14, 2023, applicants filed a notice of appeal from the January 3, 2023 final decision. Applicants asserted that the fentanyl was the only substance found in lethal levels in decedent's system at the time of his death. Applicants stated that the text messages between decedent and an individual named Liebhart

indicate that decedent was unaware that he was ingesting fentanyl. Based on those assertions, applicants argue that decedent was a victim and that they should be compensated for their funeral and crime scene clean up expenses.

{¶6} On April 27, 2023, applicants filed a brief with the court in which they reasserted their stance outlined in the notice of appeal.

{¶7} On May 11, 2023, the AG filed a brief in which it pointed to the cases In re Stephen Stanley, In re O'Neill, and In re Camp. The AG stated that in Stanley, the court focused on whether the decedent voluntarily took the drugs that were sold to him; upon finding that he did voluntarily ingest the drugs, the court determined that even though charges were filed against the drug dealer because of decedent's death, there was no evidence of foul play thus the decedent was not a victim of criminally injurious conduct. The AG asserted that the holding in Stanley was upheld in Camp and O'Neill. The AG concluded that because the applicants here were not able to provide any evidence of foul play with respect to decedent's ingestion of the drugs, decedent was not a victim and applicants are not entitled to compensation.

{¶8} Hence, a hearing was held before this magistrate on June 1, 2023, at 10:00 a.m. Assistant Attorney General Melissa Montgomery appeared on behalf of the State of Ohio. Applicants were present and represented themselves.

{¶9} Applicant Pratt ("Pratt") made a brief opening statement asserting that her son died of fentanyl poisoning and that makes him a victim under the statute. The AG waived its opening statement.

{¶10} Pratt testified that decedent did not intend to buy or consume a lethal dose of fentanyl. Pratt stated that decedent was the victim of a drug dealer intending to increase his profits by distributing fentanyl. Pratt asserted that while the AG stated that decedent had a needle in his arm when he was found deceased in his apartment, this is false. Pratt stated that decedent was coerced into buying drugs from a dealer he was not familiar with prior to his death. Pratt testified that since this appeal has been filed, the drug dealer pled guilty to involuntary manslaughter of decedent and that should be enough proof that decedent was a victim of criminally injurious conduct. Pratt opined that the AG has wrongfully stigmatized decedent because of his prior actions. The AG did not cross examine Pratt.

{¶11}  Applicants submitted four exhibits into evidence.  Applicants' Exhibit 1 is a journal entry from the Cuyahoga County Court of Common Pleas showing that the defendant drug dealer pled guilty to involuntary manslaughter with respect to decedent. Applicants' Exhibit 2 is the indictment for the defendants in the criminal case related to decedent's death.

{¶12}  Applicants' Exhibit 3 is a Lakewood Police Department incident report dated May 23, 2020, related to decedent's overdose.  This report states that decedent's father found him in his apartment after decedent overdosed.  The responding officers found white and pink powders on a mirror on decedent's dresser.  The officers also found a wrapping paper, a plastic paper, a cut straw, and a digital scale.  There was no mention of finding any needles at the scene.  There were several transcriptions of text and Facebook messenger conversations between decedent and Samantha Liebhart (one of the defendants in the criminal case), decedent and Javier Ruiz, Samantha Liebhart and Gregory Miller (the other defendant in the criminal case), Samantha Liebhart and Kayla Ralf, and Gregory Miller and several other contacts.  These conversations show decedent asking for "blow", "coke", and "boy" the day that he died.  There is mention of a pink substance in these transcripts but there is no mention of fentanyl.

{¶13}  Applicants' Exhibit 4 consists of the receipts from the funeral and clean up expenses.  Applicants rested their case.

{¶14}  The AG did not present any witnesses.

{¶15}  For their closing statement, applicants reasserted the contentions made in their application and appeal, and the statements made by Pratt in her testimony.

{¶16}  In closing, the AG stated that a voluntary ingestion of drugs cannot constitute criminally injurious conduct.  The AG stated that the facts of this claim are nearly identical to the facts of In re Stephen Stanley.  The AG asserted that in Stanley the drug dealer in the criminal case was charged with and convicted of involuntary manslaughter, reckless homicide, and permitting drug abuse for furnishing the decedent with the drugs that contributed to his death.  The AG argued that this court in Stanley found that because decedent voluntarily took the drugs, there could be no criminally injurious conduct.  The AG asserted that this court has found multiple times that the voluntary ingestion of drugs cannot constitute criminally injurious conduct.  The AG

contended that there was nothing in the file to indicate that decedent did not voluntarily consume drugs. The AG asserted that the decedent's father indicated that decedent had a known history of marijuana and cocaine use. The AG asserted that there was nothing in the file to indicate that decedent did not know he was purchasing fentanyl and that the pink substance decedent purchased could have been fentanyl; however, assuming decedent did not know, the AG stated that decedent assumed the risk of unknown substances being present when he entered into an illegal drug transaction, which is an inherently dangerous activity. The AG requested that the court uphold its final decision.

**{¶17}** Finally, applicants asserted that decedent never intended to buy the pink substance for himself. Applicants refuted the assertion that decedent should have known about the risk of fentanyl because at the time of his death, fentanyl was not as widespread as it is now. Applicants concluded that decedent was a victim. Whereupon the hearing concluded.

**{¶18}** On June 8, 2023, applicants filed a letter with the court, which included a letter from the Cuyahoga County Court of Common Pleas notifying them that they may submit a Victim Impact Statement as part of a pre-sentence investigation report in Gregory Miller's criminal case. Applicants argue that since they are considered victims in that criminal case, this court should recognize decedent as a victim for an award of reparations.

**{¶19}** R.C. 2743.52(A) places the burden of proof on an applicant to satisfy the court that the requirements for an award for reparations have been met by a preponderance of the evidence. In re Rios, 8 Ohio Misc. 2d 4, 7, 455 N.E.2d 1374 (Ct. of Cl. 1983).

**{¶20}** R.C. 2743.51(C)(1) defines criminally injurious conduct as, "any conduct that occurs or is attempted in this state; poses a substantial threat of personal injury or death; and is punishable by fine, imprisonment, or death, or would be so punishable but for the fact that the person engaging in the conduct lacked capacity to commit the crime under the laws of this state."

**{¶21}** This court has consistently held that unless there was evidence of foul play which resulted in the death of decedent, the decedent's voluntary ingestion of drugs is not criminally injurious conduct under R.C. 2743.51(C)(1), regardless of a drug dealer's

conviction for such death. In re Stanley, Ct. of Cl. No. 2007-90340-VI, (Aug. 31, 2007), aff'd jud (Dec. 12, 2007), 2007-Ohio-4700; In re O'Neill, Ct. of Cl. No. 2015-00975-VI (Oct. 26, 2016), aff'd jud (Nov. 29, 2016); In re Camp, Ct. of Cl. No. 2018-01054-VI (Nov. 21, 2018), aff'd jud (Dec. 7, 2018). Here, applicants have not submitted any evidence of foul play. There is nothing in the case file to indicate that decedent was forced to consume or purchase the drugs that led to his death. Further, no evidence has been presented to prove that decedent did not know he was consuming fentanyl.

{¶22} From a careful review of the case and consideration of the briefs and evidence submitted at the hearing, I find applicants have not presented sufficient evidence to prove that decedent was a victim of criminally injurious conduct. Therefore, I recommend the AG's decision of January 3, 2023, be affirmed.

{¶23} *A party may file written objections to the magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i). If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed. A party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion within 14 days of the filing of the decision, as required by Civ.R. 53(D)(3)(b).*

HOLLY TRUE SHAVER
Magistrate

A copy of the foregoing was personally served upon the Attorney General and sent by regular mail to:

Filed: 06/28/2023
Sent to SC Reporter 9/20/23